ROBERTSON, Presiding Judge.
In August 1992 the Board of Zoning Adjustment of the City of Mobile (Board of Adjustment) denied Don Wade Williams’s application for a variance from a local zoning ordinance. Pursuant to § 11-52-81, Code 1975, Williams appealed to the circuit court for a trial de novo. On January 7, 1993, following an ore tenus proceeding, the trial court entered an order granting Williams’s request for a variance, subject to certain conditions.
The Board of Adjustment appeals to this court, contending that it was error for the trial court to grant the variance.
Where, as in this case, the evidence was presented ore tenus, the findings of the trial court are presumed to be correct, and the dispositive issue on appeal is “whether the judgment so preponderates against the evidence as to be plainly and palpably erroneous.” Pipes v. Adams, 381 So.2d 86, 87 (Ala.Civ.App.1980).
A board of adjustment, as well as the circuit court on appeal for trial de novo, is authorized to grant a variance from the terms of a zoning ordinance “as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done.” § 11 — 52—80(d)(8), Code 1975 (emphasis added); see also, Board of Adjustment of Mobile v. Murphy, 591 So.2d 505 (Ala.Civ.App.1991).
Our supreme court has stated that no one factor determines the question of what is an unnecessary hardship. City of Mobile v. Sorrell, 271 Ala. 468, 124 So.2d 463 (1960). Instead, all relevant factors, when taken together, must demonstrate that the plight of the property is unique in that the property cannot be put reasonably to a conforming use due to the limitations imposed upon it by reason of its zoning classification. Id.
The property in question, located on Cedar Crescent Drive in Mobile, comprises a 70-acre mobile home park, zoned “R-3” for multi-family residential use. Pursuant to the zoning ordinance, mobile home parks are an allowable use of R-3 property. Williams, the property owner and manager of the mobile home park, sought a variance permitting mobile home sales on the property, a “B-3” community-business use.
The record shows that Williams used the property solely as a mobile home park from 1977 until sometime in 1991, when he began also to sell new mobile homes on the property. He sought a variance after being notified that such sales violated the zoning ordinance.
Williams contended at trial that he was unable to use the property solely as a mobile home park and that before he began the sale of mobile homes, the park was on the verge of bankruptcy. He testified that prior to beginning sales, he had been able to rent approximately only 120 of 450 spaces available for mobile homes on the property and that occupancy of the park had remained at that level for a period of nearly seven years.
Williams stated that, at any one time, he keeps and displays from four to eight new mobile homes for sale near the rental and management office in the park and that when people buy a new mobile home, they frequently move the mobile home into one of the vacant spaces in the park. According to Williams, approximately 240 spaces in the park are currently occupied. Williams testified that because of the layout of the sewer system and the water and electrical facilities on the property, it would not be economically feasible to put the property to another use. He indicated that the property had been completely designed for use as a mobile home park and not some other kind of residential use.
Williams also testified that all of the mobile home sales took place in the interior section of the park, close to the rental and management office, and that the general public could not see the sales area from the street outside the park. He stated that because the rental and management office is also used as the mobile home sales office, there was no need to build any new structures in connection with the sales. Williams believed that the sale of new mobile homes actually upgraded the park because buyers often replaced their old mobile homes with the new homes.
*415 A real estate appraiser who inspected the subject property and the surrounding neighborhood testified that he believed the sale of mobile homes on the property would have no adverse effect upon the value of other property in the neighborhood. The appraiser based his opinion upon the fact that all sales of mobile homes took place within the interi- or of the park and at a point not visible from outside the park and the fact that there were already numerous existing non-conforming commercial uses in the area near the park, including a restaurant-lounge, a sewer-cleaning service, and a septic tank service. It was the appraiser’s opinion that any increase in traffic caused by the sale of mobile homes would be minimal.
The appraiser testified that the property was not suitable for other residential uses. He cited, as did Williams, the layout of the utilities’ systems within the mobile home park and also indicated that the desirability of the surrounding neighborhood had waned. The appraiser testified that, due to the character of the area, there was a lack of demand for new houses where the subject property was located and that construction of apartments on the subject property would quadruple its density factor.
The evidence showed that the property was unsuitable for any residential use other than as a mobile home park. However, prior to the time Williams began to sell mobile homes in the park, most of the space in the park was unrented. Such stagnation continued for almost seven years, and the park’s viability was threatened, demonstrating that the literal enforcement of the R-3 classification had resulted in an unnecessary hardship to the property. See § 11 — 52—80(d)(3). Further, the limited sales of mobile homes in the interior portion of the park would not change, in any significant way, the use of the land, nor, the evidence shows, would it detract from the character of the neighborhood.
We are aware that variances from zoning ordinances are to be granted sparingly, Ex parte Chapman, 485 So.2d 1161 (Ala.1986); however, the trial court placed certain restrictions upon the variance in its final order. That order requires that should fewer than 100 mobile homes be in use as residential mobile homes on the subject property, the right to sell mobile homes on the property shall cease; that all sales of mobile homes occur in an area not readily visible from the city streets surrounding the property; that there be no more than eight new mobile homes on display for sale on the property at any one time; and that all sales be conducted no further than 300 feet from the rental and management office in the mobile home park. We find these restrictions to be a reasonable and effective means of protecting the public interest.
“The facts of each individual case must be weighed in determining whether a variance from the terms of a municipal ordinance should be granted.” Board of Adjustment of Mobile v. Sigler, 518 So.2d 725, 727 (Ala.Civ.App.1987) (citation omitted). Upon review of the record, we find that there was sufficient evidence to establish the existence of an unnecessary hardship and that the granting of the variance would not be contrary to the public interest. Therefore, we do not find the judgment of the trial court in this case to “so preponderate[ ] against the evidence as to be plainly and palpably erroneous.” Pipes, supra.
In view of the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
THIGPEN and YATES, JJ., concur.